TOWNSEND v. LOW, *et. al.*

The court can settle a decree without the necessity of a notice of settlement or on short notice.

It is not regular for a master to sign his report without first issuing a warrant to settle. But, where a copy of report and order of confirmation has been served and decree enrolled, the neglect to serve the warrant to settle will not, alone, be sufficient to open the proceedings.

Where a decree fixes the *data* for computation, the master should not depart from it. Still, where a master did so and it was beneficial to the defendant, the latter could not take advantage of the irregularity. But where it was done and the execution on it was, in amount, (wrongly) against the defendant, the court put it to the complainant to relinquish the improper excess, or to consent to waive the decree.

Where a defendant, in a bill for an account, has put in his answer without oath and does not show facts which he wishes to give in evidence or what witnesses, in particular, it will be important for him to examine, a decree, taken by default, will not be opened to give him the privilege of going back to proofs.

THE bill was filed by the complainant, William B. Townsend, calling the defendant, Daniel Low, to account in relation to joint operations in real estate; and claiming sole right to a mortgage covering a part of it. And the former had obtained a decree, before the Assistant Vice-Chancellor of the First Circuit, by default. On the day the decree was obtained, namely, on the tenth day of March, one thousand eight hundred and forty-three, the solicitor for the complainant prepared a draft of a decree; and attended the Assistant Vice-Chancellor that same day to procure his allowance, but his honor directed him to give notice of settlement for the following morning at ten o'clock. The solicitor served notice and copy in the afternoon. At the time of the proposed settlement, the complainant's solicitor attended before the Assistant Vice-Chancellor; and the same was allowed by his honor; and the decree was thereupon filed. A summons to compute was then issued by the master to whom the decree was referred and served on the defendant's solicitor. As it turned out that the defendant Low was entitled to a deduction (on account of a judgment) which was not embraced by the *data* in the decree, the same was allowed

*May 24, 1843.*

*Practice. Master's office. Report. Decree. Default.*

before the master and taken into account in his report; and, on the said reference before the master, a witness, who had before testified in the examiner's office, was again examined to prove the dates of payments made to the complainant, (and which, by a stipulation between the parties, were to have been allowed) and stated that, having made a more minute and accurate examination of the accounts, he found that the sums actually paid to the complainant was less, by the sum of two hundred and twenty dollars, than the sum which he had given on his examination in the cause. The master, therefore, made a special report as to it. No warrant was issued to settle the master's report; it was filed and an order entered for confirmation; and a copy of the report and order was served. The decree became enrolled and was docketed. Afterwards, the solicitor for the complainant discovered the existence of a clerical error in that part of the order of confirmation which recited the finding of the master's report—the order stating the sum at eight thousand and forty-eight dollars and six cents, while the finding was for eight thousand four hundred and eighty-four dollars and six cents. The error was a clerical one—and the docket of the decree coincided with the amount stated in the report. An execution had been issued for the latter sum (not, therefore, noticing or deducting the two hundred and twenty dollars.)

The defendant, Daniel Low, now presented a petition, praying for a further reference or that the decree might be modified.

The above particulars, when coupled with the opinion of the court, will be found sufficient for an understanding of the points.

Mr. *F. B. Cutting*, for the petitioner, referred to *Tyler* v. *Simmons*, 6 Paige's C. R. 129; Laws of 1840, in regard to executions, § 23, 24, 25, 27, 39; 2 Revised Statutes, 178, § 71; Ib. 183, § 104; *Millspaugh* v. *McBride*, 7 Paige's C. R. 509; *Tripp* v. *Vincent*, 8 Ib. 176.

Mr. *William S. Johnson*, contra.

*June* 13.          THE VICE-CHANCELLOR:—There was no irregularity in

the proceedings down to the hearing and the entry of the decree on the eleventh of March, one thousand eight hundred and forty-three. It was competent for the Assistant Vice-Chancellor to settle and allow the decree upon short notice or even without any notice of the settlement to the defendant.

Then, as respects subsequent proceedings under it. On receiving a copy of the decree, the master on the same day issued a summons, underwritten : " To compute the amount due to the complainant under the final decree in this cause" returnable on the fourteenth of March ; and the defendant or his solicitor not appearing, the master proceeded and made his report on the fifteenth of March, without any warrant to settle. As the defendant did not appear on the return of the summons the master was at liberty to proceed *ex parte :* (Rule 104.) But, he was not strictly regular in thus settling and signing his report without first sending a warrant to the defendant's solicitor to attend. The 109th rule seems to require, in all cases where the defendant is in court by a solicitor, that he should have notice to attend the settlement of the draft report, and that too whether he has appeared on the reference or not ; and I no where find in the books of practice that a warrant to settle can, in such cases, be dispensed with. Still, after being served with a copy of the report and a copy of the order of confirmation, as the defendant's solicitor was on the seventeenth or eighteenth of March, and taking no immediate steps to set aside the report for irregularity or to be let in to except to it, but quietly resting upon it until after the decree had become enrolled and a *fi. fa.* issued, I should hardly feel myself called upon, for the sake of enforcing mere regularity of practice, to set the report aside. Something more should be shown, going to the merits—such as, a miscalculation or error in the computation or departure from the order of reference to induce the court, under such circumstances, to disturb the report. Has anything to that effect occurred in this instance ? The decretal order gave the *data* for the computation of interest and for ascertaining the balance which the defendant was to pay. The master departed from this when he received the admission of the complainant that the amount due from him

on the judgment was to be set off and credited to the defendant; but, as this had been the subject of an express stipulation between them and was inadvertently omitted to be mentioned in the decree and as the allowance of it was to benefit the defendant, he has no right to complain of the master in that respect. The master also departed from the order, when he permitted a witness to correct the mistake in his former testimony as to the amount of the payments by showing they were two hundred and twenty dollars less than the amount admitted by and inserted in the decree. But, as the master made distinct calculations on both amounts, showing the result of each, so that the court might restrict the recovery to that which comported best with the decretal order he had taken, I do not perceive the necessity of setting aside the report entirely for that cause. So, with regard to the other amounts or results reported by the master on the different hypotheses assumed. Though not called for by the decretal order of reference, they can do no harm to the defendant so as, necessarily, to require the report to be set aside : since the court can take care that the complainant shall receive only the amount to which he is properly entitled. That amount, upon the basis of the decree as it stands, is the sum of eight thousand two hundred and forty two dollars and eighty-nine cents, being one of the sums reported by the master and which corresponds with the decree. For this sum the report should have been confirmed, unless the complainants had first applied to correct the decree on the witness's latter testimony. There is an error in the confirmatory order of the seventeenth of March as to the amount intended—instead of eight thousand and forty-eight dollars and six cents, the solicitor evidently intended to have the report stand confirmed for eight thousand four hundred and eighty-four dollars and six cents (the amount for which he afterwards issued the execution) and which is the true amount after correcting the mistake ; but which can not be done under the present decree. If the complainant is willing to relinquish the difference, an order can now be made, vacating the order of the seventeenth of March as erroneous and confirming the report *nunc pro tunc* as of that day for the sum of eight thousand two hundred and forty-two dol-

lars and eighty-nine cents and reducing the amount to be made on the execution accordingly. But, if the complainant would claim more and insist upon having the mistake of two hundred and twenty dollars corrected, he must consent to waive the present decree and to go back to the taking of testimony and to a rehearing of the cause, letting the defendant in to take proofs also and to defend.

The next question is, whether the defendant has shown enough of merits and by way of excusing his defaults to entitle him to be let in to a defence generally by opening the proofs and going to another hearing ? I cannot perceive that he has. In the first place, his answer was put in without oath and he does not now show any particular facts he wishes to give in evidence or what witnesses, in particular, it will be important for him to examine. After what has taken place, he is bound to show some particulars of this sort in order to have the privilege of going back to proofs. Besides, the excuse put forward for not attending the examination of witnesses at the time can hardly avail. His solicitor's neglect was his own, especially after notice to him personally of the complainant's proceedings. Though absent at Washington, he could have given directions and procured counsel to attend and cross-examine the witnesses. I see no propriety in opening the proofs. Then, upon the evidence as it stands, has the complainant obtained a decree which he is not entitled to? I think not. It seems to me that the testimony warrants the court in assuming, as it did, that the balance of the account annexed to the bill was the true sum due ; and that the court might well decree the payment of that sum, with interest. Nor do I see any thing wrong in charging the defendant with the whole amount of the mortgage-debt as between him and the complainant. He does not show that he has not realized it—and the testimony goes far to show that he has, when his dealings in shares of the Staten Island Association are taken into the account.